UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

William J. Carey,
        Plaintiff

        v.                                    Civil No. 05-cv-010-SM
                                              Opinion No. 2006 DNH 032
Kristi L. Eglody,
        Defendant

## O R D E R

William Carey, appearing pro se, claims that Kristi Eglody
is liable to him for defaming him, tortiously interfering with
his advantageous contractual relations, and maliciously
prosecuting him for stalking her.  Before the court is
defendant's motion for summary judgment.  Plaintiff objects.  For
the reasons given, defendant's motion for summary judgment is
granted in part and denied in part.

### Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no
genuine issue as to any material fact and . . . the moving party
is entitled to a judgment as a matter of law."  FED. R. CIV. P.
56(c).  When ruling on a party's motion for summary judgment, the
court must view the facts in the light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor.  See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003) (citing Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 185 (1st Cir. 2003)).

## Background

On April 29, 2002, after a hearing, the Manchester District Court issued a "Stalking Final Order," which included a protective order against Carey.  That order was based upon a judicial determination that Carey had stalked Eglody within the meaning of N.H. REV. STAT. ANN. ("RSA") § 633:3-a.  The protective order has been extended three times, on April 29, 2003, April 29, 2004, and April 12, 2005.  Carey appealed the most recent extension to the New Hampshire Supreme Court.  While it is not entirely clear from the record, it appears that plaintiff has been criminally prosecuted three times for stalking defendant or attempting to violate the protective order.  He was acquitted twice and convicted once.[1]  It is undisputed, for purposes of this litigation, that plaintiff has been the subject of several articles in local newspapers, but Eglody "made no statements and

---

[1] His conviction was affirmed on appeal by the New Hampshire Supreme Court.  State v. Carey, No. 2004-0544, ____ N.H. ____ (December 22, 2005).

2

gave no information to the Manchester Union Leader, Nashua
Telegraph, []or any other media outlet."  (Def.'s Mot. Summ. J.,
Eglody Aff. ¶ 13.)


**Discussion**

A. Defamation

Plaintiff asserts that "Ms. Eglody, through the Manchester
Police, repeatedly filled the front page of both the Manchester
Union Leader and the Nashua Telegraph with blatant lies
concerning Mr. Carey."  (Compl., Allegation 3).  Specifically, he
claims that defendant defamed him by stating that he had
"'stalked' her for over a decade" and that he had "forced (her)
to move out of state."  (Id.)  According to plaintiff, the former
statement is false because he was never arrested or subjected to
a restraining order until 2002, and the latter statement is false
because defendant did not get an unlisted telephone number when
she relocated from New Hampshire to North Carolina, and because
she gave her North Carolina address to the University of New
Hampshire Alumni Association, even though she knew plaintiff was
a member (and, presumably, knew that plaintiff would have easy
access to the information it maintained).  Defendant moves for

summary judgment on limited grounds of collateral estoppel and litigation privilege.

"Statements made in the course of judicial proceedings constitute one class of communications that is privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings." Provencher v. Buzzell-Plourde Assocs., 142 N.H. 848, 853 (1998) (citing Pickering v. Frink, 123 N.H. 326, 329 (1983); McGranahan v. Dahar, 119 N.H. 758, 763 (1979)). New Hampshire has adopted "the rule that treats both formal and informal complaints and statements to a prosecuting authority as part of the initial steps in a judicial proceeding, and as such entitled to absolute immunity from an action for defamation." McGranahan, 119 N.H. at 769 (citing W. PROSSER, TORTS § 114 at 781 (4th ed. 1971)). When made in the course of a judicial proceeding, "[a] statement is presumed relevant unless the person allegedly [injured] demonstrates that it was so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." Provencher, 142 N.H. at 853 (citation omitted).

4

Here, while plaintiff points to allegedly actionable statements appearing in two newspapers, he identifies Manchester police officers as the source of those statements.  The publication at issue in this case, then, consists of Eglody's statements to the police.  Under McGranahan, those statements are absolutely privileged, so long as they were relevant to the proceedings in which they were made, i.e., defendant's efforts to obtain or extend the protective order, and plaintiff's criminal prosecutions for stalking and/or attempting to violate the protective order.

The first allegedly defamatory statement pertains to the persistence of Carey's pursuit of Eglody; the second pertains to Eglody's response to Carey's attempts to contact her.  It is difficult to imagine statements more germane to the proceedings in which they were made.  Because defendant's statements are absolutely privileged, defendant is entitled to judgment as a matter of law on plaintiff's defamation claim.

B. Tortious Interference with Contractual Relations

Plaintiff asserts that defendant interfered with his employment[2] by sending Manchester police officers to his workplace, Energy to Go.  Defendant moves for summary judgment on grounds of collateral estoppel.  She argues that plaintiff's complaint "can only be read as claiming that [she] caused him to be fired because of the stalking charges" (Def.'s Mem. of Law at 9), and that bringing those charges was not wrongful, as a matter of law, because those charges resulted in both a protective order and a conviction.

"To establish liability for intentional interference with contractual relations, a plaintiff must show: (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference."  Hughes

---

[2] According to plaintiff, defendant interfered with both the job he held at Energy to Go and his prospects for future employment at the Easter Seals' "Jolicoeur Center."  However, based upon the Magistrate Judge's order of April 7, 2005 (document no. 2), and my order of August 23, 2005 (document no. 26), plaintiff has a claim for tortious interference with contractual relations, but does not have a claim for intentional interference with a prospective contractual relationship.

v. N.H. Div. of Aero., 152 N.H. 30, 40-41 (2005) (citing
Demetracopoulos v. Wilson, 138 N.H. 371, 373-74 (1994)).

Accepting that plaintiff had a contractual relationship with
his employer, his claim still fails, as a matter of law, on the
third element – improper interference with that relationship.
Plaintiff alleges no contact whatever between defendant and any
of his employers.  Rather, he alleges only that defendant
complained to the Manchester Police Department that he had been
stalking her and that the police, in turn, arrested or served
process on him at work, which eventually led to his loss of one
or more jobs.  Leaving aside defendant's argument that she did
not know of the employment relationships she is alleged to have
interfered with, the act plaintiff accuses her of committing –
reporting him to the police – was not wrongful.  As defendant
points out, her complaints were sufficiently well founded to have
resulted in the issuance of a protective order that has been
renewed three times, as well as a criminal conviction.  Because
plaintiff has neither alleged nor presented evidence of conduct
on defendant's part that might constitute wrongful interference
with his employment relationships, defendant is entitled to

judgment as a matter of law on plaintiff's tortious interference claim.

## C. Malicious Prosecution

Plaintiff asserts that defendant is liable for maliciously prosecuting him for stalking her.  He cannot sue based upon the case in which he was convicted.  But he says he was acquitted in two other cases (the 2002 stalking charge and the 2003 attempted violation of the protective order charge).[3]  Defendant moves for summary judgment on grounds of res judicata and/or collateral estoppel, arguing that probable cause supporting the two criminal prosecutions in which plaintiff was acquitted is conclusively established by the Stalking Final Order that was issued and thrice renewed by the Manchester District Court.

"To succeed in an action for malicious prosecution, the plaintiff must prove that he was subjected to a criminal

---

[3] The record contains a "Return from Superior Court" documenting plaintiff's acquittal in Crim. No. 03-S-1078, which involved a charge of attempted violation of a stalking order, prosecuted in the New Hampshire Superior Court (Hillsborough County, North).  Plaintiff also appears to have been acquitted of a charge of stalking, after a jury trial, in Crim. No. 02-S-1213, also prosecuted in Hillsborough County, North.  But the record does not include documentation concerning the disposition of that charge.

8

prosecution instituted by the defendant without probable cause
and with malice, and that the criminal proceeding terminated in
his favor." <u>Hogan v. Robert H. Irwin Motors, Inc.</u>, 121 N.H. 737,
739 (1981) (quoting <u>Stock v. Byers</u>, 120 N.H. 844, 845 (1980))
(internal quotation marks omitted).

> Probable cause in the malicious prosecution
> context has long been defined as "such a state of facts
> in the mind of the prosecutor as would lead a man of
> ordinary caution and prudence to believe or entertain
> an honest and strong suspicion that the person arrested
> is guilty." <u>MacRae v. Brant</u>, 108 N.H. 177, 180 (1967);
> <u>Cohn v. Saidel</u>, 71 N.H. 558, 567 (1902); <u>Eastman v.</u>
> <u>Keasor</u>, 44 N.H. 518, 520 (1863).  It depends not upon
> the accused's guilt or innocence of the crime charged
> but upon the prosecutor's honest and reasonable belief
> in such guilt at the time the prosecution is commenced.
> <u>MacRae v. Brant</u>, <u>supra</u>, 108 N.H. at 180.
>     The existence of probable cause is a question for
> the jury to the extent that it depends upon the
> credibility of conflicting evidence proffered on that
> issue.  <u>Perreault v. Lyons</u>, 99 N.H. 169, 171 (1954);
> <u>Cohn v. Saidel</u>, <u>supra</u>, 71 N.H. at 563.  Whether there
> was probable cause is ultimately, however, a question
> of law to be determined by the court.  <u>MacRae v. Brant</u>,
> <u>supra</u>, 108 N.H. at 180; <u>Perreault v. Lyons</u>, <u>supra</u>, 99
> N.H. at 172.

<u>Stock</u>, 120 N.H. at 846 (parallel citations omitted).


Plaintiff's first criminal prosecution, in Crim. No. 02-S-
1213, was supported by probable cause.  The prosecution was
initiated based upon several factors.  First, a final stalking

order had been issued against plaintiff.  That order was based
upon a judicial determination that plaintiff had stalked
defendant, and it required plaintiff to have no contact with
defendant.  In addition, defendant reported that plaintiff had,
with no help or encouragement from her, tracked down her North
Carolina address on several occasions after she had moved from
one address to another.  And, evidence demonstrated that
notwithstanding the stalking order, plaintiff mailed defendant
two packages with return address labels bearing the names "Bill &
Kristi Carey."  Those facts easily provided probable cause to
believe that plaintiff had stalked defendant.  Thus, defendant is
entitled to judgment as a matter of law on the claim of malicious
prosecution based upon the 2002 stalking charge.

Plaintiff's malicious prosecution claim based upon the 2003
attempted violation of the stalking order charge (Crim. No. 03-S-
1078) stands on a different footing.  Plaintiff's pro se
pleadings are, of course, very difficult to follow, but the
Magistrate Judge made as much sense of them as possible, and
ruled that plaintiff asserted, inter alia, a claim for malicious
prosecution "for stalking."  Fairly construed, the pleadings
state, essentially, that defendant initiated the stalking-related

10

prosecutions by complaining to the police without basis.  One of those prosecutions was for "attempted violation" of the outstanding protective order.

With respect to that claim, too, counsel for defendant argues that "[p]robable cause is established by the four restraining orders which have been granted."  The fact that the protective order was issued and extended three times says a great deal about what plaintiff has done, and even tends to establish probable cause for at least the initial prosecution (note that under New Hampshire law, a subsequent stalking incident is not a prerequisite to extension of the order, a simple showing of "good cause" is sufficient), see R.S.A. 173-B:5, IV.

But, the issuance and extensions of the stalking order, standing alone, do not say anything about whether plaintiff "attempted to violate" that order.  He was so charged, but was acquitted.  The court has studied the record in detail, expecting to find some pertinent and reliable information related to that charge, without success.  So, the status of the case with respect to that charge is this.  Plaintiff says defendant caused his prosecution for attempted violation of the protective order

11

without basis, without probable cause, and with malice.
Defendant responds by pointing to the protective order itself as
necessarily establishing probable cause <u>for</u> <u>the</u> <u>attempted</u>
<u>violation</u> <u>charge</u>.  But the record provides little reliable
(admissible) evidence concerning the nature of the prosecution,
its history, or what initiated it.

   The record as a whole suggests that defendant can probably
easily establish her entitlement to summary judgment on that
issue as well, but she has not yet done so.  The record as
currently developed does not address many critical questions.
For example, was the attempted violation charge initiated by
Eglody, or did someone else lodge a complaint with the police
leading to that charge?  Or, was that charge initiated by the
police based upon information developed by them?  What do the
charging documents say about the basis for the prosecution – were
affidavits filed in support?  What court proceedings were held
and what findings were entered?  What role, if any, did Eglody
play, in the attempted violation prosecution?

   On this record, the court is left with no legally
supportable alternative other than denial of defendant's motion

as to that charge.  Accordingly, the motion is denied with respect to the attempted violation of the stalking order charge, but without prejudice to filing a supplemental motion, well-supported and briefed, directed at the attempted violation prosecution.

### Conclusion

For the reasons given, defendant's motion for summary judgment (document no. 29) is granted in part and denied in part.


**SO ORDERED.**

_Steven J. McAuliffe_
Steven J. McAuliffe
Chief Judge

March 17, 2006

cc:  William J. Carey, pro se
     Corey M. Belobrow, Esq.